## KENTUCKY DISTILLERIES & WAREHOUSE CO. v. HAMILTON, Collector of Internal Revenue.

(District Court, W. D. Kentucky.    June 30, 1921.)

Internal revenue ⊂⊃24—Owner cannot be taxed on whisky stolen from government warehouse.

    Where whisky stored in a bonded warehouse, where it remained after the taking effect of the Eighteenth Amendment, in the sole custody and control of the United States, was stolen and removed, the owner cannot be required to pay the internal revenue tax thereon.

In Equity. Suit by the Kentucky Distilleries and Warehouse Company against Elwood Hamilton, lately Collector of Internal Revenue. On demurrer to petition. Overruled.

Wm. Marshall Bullitt, of Louisville, Ky., for plaintiff.
W. V. Gregory, U. S. Dist. Atty., of Louisville, Ky., for defendant.

WALTER EVANS, District Judge. Having, on August 24, 1920, paid to the defendant under protest $4,636.08 internal revenue taxes on certain distilled spirits stored in a bonded warehouse, the plaintiff in due course and form applied to the Commissioner of Internal Revenue for the refunding thereof. That officer for more than six months after the receipt of the claim therefor had neither refunded the same nor refused to do so, and, under the statute, that gave the right to the plaintiff to sue for its recovery now.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

We need not go into any lengthy detail, either of the averments of the plaintiff's petition or of the contentions of the respective partes, inasmuch as the only question now to be decided is whether the petition of the plaintiff states a cause of action—a demurrer to that pleading having been filed by the defendant.

Before the ratification of the Eighteenth Amendment all of the distilled spirits on which the taxation complained of was collected had been manufactured and deposited in a bonded warehouse of the plaintiff near the city of Covington, Ky. They had been manufactured in due course under the sanction of the law as it then existed. Being stored in the bonded warehouse, the spirits remained there after the ratification of the Eighteenth Amendment in the exclusively controlled custody and care of the United States through its revenue officials.

This, in a general way, being the situation on the 30th day of January, 1920, the bonded warehouse was broken into through an underground tunnel by several persons, among whom was a deputy collector of internal revenue, and the distilled spirits, the taxation upon which is involved in this action, were stolen and removed by those persons from the bonded warehouse. The persons who had committed this act of thievery were indicted, convicted, and punished therefor. No one of them was in any wise in the employ or under the control of the plaintiff, and no part of such distilled spirits was removed by the plaintiff or in any way by its knowledge, consent, or approval.

These being the facts admitted by the demurrer the question is whether the United States had any right to assess or enforce the collection of any of the taxes on the distilled spirits thus stolen and thus removed from the bonded warehouse. Preliminary to any discussion of that question, it may be said that of course, if the plaintiff or anybody over whom it had any control had removed the spirits by the consent or connivance of the plaintiff, the taxes would have been due from the plaintiff and collectable upon their removal. But that is not the case we are dealing with. Here, we repeat, neither the plaintiff nor anybody under its control had anything to do with removing the spirits which, while in the bonded warehouse, as we have said, were in the exclusive custody and under the exclusive control of the United States, through its officers in whose charge the spirits were placed.

The Eighteenth Amendment was of course a radical change in respect to distilled spirits, which had been previously made lawfully and properly. No compensation was offered by the people for the property, the value of which was thus probably largely destroyed, unless in course of time the spirits could be sold under the law. Meantime, however, as we have seen, the United States altogether controlled the custody thereof.

This situation presents in bald form the question whether the plaintiff shall be held responsible for the acts of the criminals who took the spirits from the custody of the government officials, when the owner could not control the situation, nor prevent the criminal acts, and in fact had no opportunity to do so. To exact taxes under such circumstances would seem to be unjust and oppressive, and until the

question is settled by final authority we are not willing to say that the government can exact taxation under such conditions, especially as the property can never be restored to the owner—a situation in which the plaintiff without fault on its part would lose both property and the taxes paid.

In our opinion the government is not under present conditions, entitled to the taxes on spirits in warehouses until, in some way, they are removed therefrom by the owner. The taxation would then be due whether the owner removed them lawfully or unlawfully. The rights of the owner cannot justly be interfered with by the wrongful acts of others, of which he knew nothing, which he could not control, and which the government ought to have prevented, if it claims taxation.

With the time at its command the court cannot at present go into any very satisfactory discussion of the question involved. We shall therefore content ourselves with the statement that we have the gravest doubts as to whether this great government of ours desires or should be permitted to inflict an act of injustice or oppression upon any citizen, such as would be inflicted here if, under the admitted facts, this taxation should be exacted from the plaintiff. Its property was in the sole custody of the United States. The United States permitted it to be stolen. The plaintiff could control neither situation, for, while the owner of spirits in a bonded warehouse is permitted to have watchmen on the outside of the warehouse to prevent raids from that quarter, those watchmen cannot enter the warehouse without a written permit from the proper revenue officer, whatever may be going on in the inside, and we repeat only the government has control over whatever goes on in the bonded warehouse, from which the spirits in this instance were stolen. This situation is radically different from that existing before January 16, 1920, and this seems to differentiate this case from that of United States v. Witten, 143 U. S. 76, 12 Sup. Ct. 372, 36 L. Ed. 81.

Under these circumstances, the plaintiff would obviously be wronged, if denied the relief sought, and without going into more detail, and moved by the considerations we have set forth, we will overrule the demurrer of the defendant, who, however, is given leave to answer the petition, if so desiring.

NOTE.—The defendant declined to plead further, and judgment was entered for the plaintiff for the amount claimed.